UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| BILLY D. WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 3:13-CV-0829 |
| | ) | Judge Aleta A. Trauger |
| PROSPECT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

Pending before the court is a Motion for Summary Judgment filed by the defendant, Prospect, Inc. ("Prospect") (Docket No. 19), to which the plaintiff, Billy D. Williams ("Williams") has filed a Response in opposition (Docket No. 23), and Prospect has filed a Reply (Docket No. 26). The parties have also filed supplemental briefs at the request of the court. (Docket Nos. 28, 29.) For the following reasons, the defendant's motion will be granted.

## BACKGROUND

This dispute involves alleged discrimination against, and termination of, Williams by Prospect on the basis of a disability.[1] Prospect is a not-for-profit corporation, based in Lebanon, Tennessee, that assists and employs individuals with disabilities. Williams is a resident of Dickson County, Tennessee. In December 2011, Prospect hired Williams for the position of Rest Area Attendant, as part of a maintenance crew for a rest area on the westbound side of Interstate

---

[1] The facts are drawn from Prospect's Concise Statement of Facts (Docket No. 18) and Williams' responses thereto (Docket No. 24), as well as the exhibits filed by the parties in support of their briefs (Docket No. 20, Exs. 1-14; Docket No. 25, Exs. 1-4). Facts are undisputed except as specifically noted.

1

40 near Dickson, Tennessee.  Williams worked twelve-hour shifts on Saturdays and Sundays.  Williams's job duties generally included (1) cleaning countertops, mirrors, and restrooms; (2) collecting trash on the grounds and in the parking lot; and (3) transporting bags of trash to onsite dumpsters.  Prospect's "Position Description" for the Rest Area Attendant Position explains that the employee provides janitorial, custodial and landscaping services.  (Docket No. 20-5, Williams Dep., Ex. 4.)  The Position Description lists seventeen categories of duties, of which two are mopping and trash pick-up.  (*Id*.)  In addition, the Position Description lists the "physical demands" of the job as "the ability to bend, squat, twist, lift, pull and push" up to 35 pounds as well as "the ability to stand and walk for a 12 hour shift."  (*Id*.)  Williams has acknowledged that the job description accurately reflects the duties and responsibilities of the Rest Area Attendant position.  (Docket No. 20-1, Williams Dep. at pp. 19-20.)

On August 26, 2012, Williams injured himself while on duty.  While Williams was throwing a bag of trash into a dumpster, the bag "got hooked," he "felt something pop and snap" in his back," and he "fell to his knees" in pain.  (*Id*. at pp. 30-31.)  Williams called his supervisor, David Moore ("Moore"), who transported Williams to a hospital for treatment.

Williams subsequently sought treatment for his back injury from Dr. Weiss, Prospect's worker's compensation panel doctor.  Dr. Weiss had plaintiff undergo an LMRI and kept him out of work until it was completed.  After reviewing the LMRI results, Dr. Weiss concluded that William's back injury was the re-aggravation of a prior injury and was therefore not work-related.  Williams was also seen by Dr. Dinkins, a personal physician who had surgically treated Williams for a back injury over a decade prior.  Dinkins concluded that (1) Williams' injury was work related and that (2) Williams needed further back surgery.  Dr. Dinkins informed Williams

2

that she would only clear him to return to work with the restrictions that Williams not perform heavy lifting, twisting, or mopping.

Moore informed Williams that Prospect's Director of Human Resources, Gary Clingman, required a doctor's release for Williams to return to work. Williams verbally informed Moore about Dr. Dinkins' willingness to release him to return to work with certain restrictions. Prospect admits the fact that Williams verbally requested light duty alternatives from Moore. Williams does not remember if he ever subsequently provided written documentation to that effect (to Moore or Clingman) from Dr. Dinkins. Prospect avers that Williams never provided any written medical excuse giving a reason to extend his return to work date or otherwise apprising Prospect of Williams's medical situation. Having received no such written communication from Williams, on October 17, 2012, Clingman terminated Williams' employment for failure to return from a medical leave.

Williams filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 29, 2012. On August 20, 2013, after receiving a Notice of Right to Sue from the EEOC, Williams filed a complaint in this court against Prospect. (Docket No. 1.) The Complaint alleges that (1) Prospect failed to make reasonable accommodations for Williams and terminated him because of a disability in violation of the Americans With Disabilities Act, 42 U.S.C. § 12101 *et seq*. ("ADA"), the Tennessee Disability Act, T.C.A. § 8-50-103 ("TDA"), and Tennessee Human Rights Act, T.C.A. §§ 4-21-101 *et seq*. ("THRA"); and (2) under Tennessee common law, Prospect retaliated against Williams for pursuing workers' compensation benefits. *Id*.

On December 31, 2014, Prospect filed the pending Motion for Summary Judgment.

(Docket No. 19.) On January 30, 2015, Williams filed a Response opposing Prospect's motion as to all claims. (Docket No. 23.) On February 9, 2015, Prospect filed a Reply. (Docket No. 26.) In response to an Order of the court, the parties filed supplemental briefing on March 23, 2015. (Docket Nos. 28, 29.)

## ANALYSIS

### I. Summary Judgment Standard

Federal Rule of Civil Procedure 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party." *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id*. (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the party's proof must be more than "merely colorable." *Anderson*, 477 U.S. 242, at 252. An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan*,

4

578 F.3d at 374 (citing *Anderson*, 477 U.S. at 252).

## II.     Williams' ADA Failure to Accommodate Claim

The ADA prohibits discrimination against "a qualified individual with a disability," 42 U.S.C. § 12112(a), and defines "discrimination" to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability," *id.* § 12112(b)(5)(A). Accordingly, failing to make a reasonable accommodation falls within the ADA's definition of "discrimination." Williams bases his discrimination claim upon Prospect's failure to accommodate his disability. Prospect acknowledges that it did not accommodate Williams's disability but argues, *inter alia*, that no reasonable accommodation was possible, because Williams was not qualified for any position.

Claims premised upon an employer's failure to offer a reasonable accommodation necessarily involve direct evidence (the failure to accommodate) of discrimination. *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007); *Hoskins v. Oakland Cnty. Sheriff's Dep't*, 227 F.3d 719, 724-30 (6th Cir. 2000); *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1182-84 (6th Cir. 1996). When an ADA plaintiff premises his claim upon direct evidence, the court does not follow the familiar *McDonnell Douglas* burden-shifting framework applicable in indirect-evidence cases (also called "circumstantial-evidence cases"). Instead, the claim is analyzed under the following framework. First, the plaintiff bears the burden of establishing that he or she is disabled. Second, the plaintiff bears the burden of establishing that he or she is "otherwise qualified" for the position, despite his or her disability: (a) without accommodation from the employer; (b) with an alleged "essential" job requirement eliminated; or (c) with a proposed reasonable accommodation. Third, the employer will bear the burden of proving that a

5

challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer. *Kleiber*, 485 F.3d at 869 (citing *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 452 (6th Cir. 2004)).

Prospect does not contest that Williams is disabled. Instead, the parties' dispute centers on whether Williams was "otherwise qualified" for the position with a reasonable requested accommodation. Accordingly, to survive summary judgment, it is Williams' burden to submit evidence sufficient to create a genuine issue of material fact regarding whether he was qualified for his position with a proposed reasonable accommodation (and, if so, whether his proposed reasonable accommodation created the undue hardship alleged by Prospect).

Plaintiff has the burden of proving that he will be "capable of performing the essential functions of the job with the proposed accommodation." *Monette*, 90 F. 3d at 1183-84. To do so, the disabled individual bears the initial burden of proposing an accommodation and showing that the accommodation is objectively reasonable. The ADA defines "reasonable accommodation" as follows:

> Reasonable accommodation. The term "reasonable accommodation" may include:
>
> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
>
> (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C.§ 12111(9). While, in certain circumstances, a job restructuring can be a reasonable accommodation, *see* 42 U.S.C. § 12111(9)(B); 29 C.F.R. § 1630.2(o)(2)(ii), job restructuring within the meaning of the ADA only pertains to the restructuring of non-essential duties or

marginal functions of a job.  *See Bratten v. SSI Servs., Inc.*, 185 F.3d 625, 632 (6th Cir. 1999) (citing *Benson v. Nw. Airlines, Inc.*, 62 F.3d 1108, 1112-13 (8th Cir. 1995)).  Put simply, job restructuring need only involve the shifting of *non-essential* duties to other employees.  *Bratten*, 185 F.3d at 625; *Mason v. Avaya Commc'ns,* Inc., 357 F.3d 1114, 1122 (10th Cir. 2004) ("[A]n employee's request to be relieved from an essential function of her position is not, as a matter of law, a reasonable or even plausible accommodation."); *Alexander v. Northland Inn*, 321 F.3d 723, 728 (8th Cir. 2003) ("It is well settled that an employer is under no obligation to reallocate the essential functions of a position that a qualified individual must perform."); *Dvorak v. Mostardi Platt Associates, Inc.*, 289 F.3d 479, 484 (7th Cir. 2002) ("Under the ADA, an employer is not required to modify, reduce, or reallocate the essential functions of a job to accommodate an employee.").

Moreover, courts have continuously found that employers are not required to assign existing employees or hire new employees to perform certain functions or duties of a disabled employee's job that the employee cannot perform by virtue of his disability.  *See id.*; *Benson*, 62 F.3d at 1112–13 (reallocating essential functions of a job to other employees is not a "reasonable accommodation" within the meaning of the ADA); *Phelps v. Optima Health, Inc.*, 251 F.3d 21, 26 (1st Cir. 2001) ("Although a reasonable accommodation may include job restructuring . . . an employer need not exempt an employee from performing essential functions, nor need it reallocate essential functions to other employees."); *Gilbert v. Frank*, 949 F.2d 637, 644 (2d Cir. 1991) (employee's requested accommodation of having co-workers perform essential lifting tasks

7

of job is not "reasonable" under Rehabilitation Act[2]). In addition, the ADA does not require an employer to create a new position to accommodate a disabled worker, *Brown v. Chase Brass & Copper Co., Inc.*, 14 F. App'x 482, 488 (6th Cir. 2001), and an employer has no obligation to create a permanent light duty post when none previously existed, *see id*. (citing *Martin v. Kansas*, 190 F.3d 1120, 1133 (10th Cir. 1999)).

In *Bratten*, a disabled auto mechanic requested that his employer provide an accommodation of reassigning up to (but no more than) twenty percent of his essential auto mechanic duties, including lifting. *Bratten*, 185 F.3d at 632-633. Bratten maintained that his employer could have reasonably accommodated his disability by restructuring his job duties and letting other employees perform the more physical tasks of an automotive mechanic for him on an *ad hoc* basis. *Id.* The court rejected Bratten's argument and found that his requested accommodation of job restructuring was unreasonable under the ADA as a matter of law. *Id.*

The situation here is similar. Williams suggested to his supervisor an accommodation of light duty alternatives that included the elimination or reassignment of any heavy lifting (including of all garbage bags), twisting and mopping duties – all of which are central to the job description for the Rest Area Attendant position. This proposed accommodation was a job restructuring whereby Williams sought to have Prospect significantly modify the duties of his Rest Area Attendant position. Williams has acknowledged that he did not know how he would perform the duties of his job, even with the proposed accommodation. (Docket No. 20-1, Williams Dep. p. 63:2-5.) Williams has also testified that, by removing the job functions as part

---

[2] Congress has given no indication that ADA accommodation claims are to be evaluated under a different framework than Rehabilitation Act accommodation claims. *Bratten*, 185 F.3d at 633 n.3.

of the proposed restructuring, there would be little left of the Rest Area Attendant job. (*Id*. at p. 63:8-10.) Finally, Williams testified that, while he could be present to pick up light garbage on the grounds, another employee would have to handle heavy garbage and many of the other functions of the position, so that the Rest Area Attendant position would necessarily involve (at least) two paid employees instead of one. (*Id*. at p. 63:15-22.)

The proposed job restructuring in this case is more extensive than the one ruled unreasonable in *Bratten*. Even Williams conceded at deposition that it would remove a significant number of duties and leave Williams with few duties left to complete. Moreover, Williams conceded that the position would need to be restructured in such a way so that fellow co-workers or a newly hired co-worker could fulfill the duties he was unable to perform.[3] The quantity of duties that Williams seeks to have restructured away to other employees far exceeds the twenty percent in *Bratten*. The court finds that the proposed accommodation of Williams's job restructuring is not, as plaintiff suggests, merely one of marginal duties, but one of essential functions. Based on that finding, the court concludes that the proposed job restructuring accommodation is unreasonable under the ADA. Prospect was not obligated to offer an accommodation whereby it reallocated essential functions of Williams's Rest Area Attendant

---

[3] For these reasons, Williams also cannot establish that he is otherwise qualified for the position with an alleged "essential" job requirement eliminated, *see Kleiber*, 485 F.3d at 869, because the proposed accommodation would have imposed an undue hardship on Prospect. *See* 29 C.F.R. 1630.2(p) (defining undue burden); *see also, e.g., Dropinski v. Douglas Cnty, Neb.*, 298 F.3d 704, 710 (8th Cir. 2002) (finding it unduly burdensome on employer to restructure position to reallocate essential functions to make bending, squatting, twisting and lifting accommodations proposed by disabled employee). Prospect would be forced to employ another individual or individuals to handle the tasks assigned to the Rest Area Attendant while continuing to keep Williams in that position, thereby creating an undue and unfair burden.

9

position to other employees or created a new light duty position where none existed before.[4]

Finally, to the extent that Williams claims that Prospect failed to engage in an interactive process to determine reasonable accommodations, the court finds that Williams has failed to create a genuine dispute of fact on this issue. Prospect knew of Williams's limitations via Moore and knew of Williams's request for light duty alternatives. Prospect evaluated that proposal and determined it to be unreasonable and (apparently) concluded that any such accommodation would result in an undue burden. Williams did not request a discussion or negotiation, nor did he request any alternatives to light duty, such as transfer to another position. To the contrary, Williams's briefing suggests that he pursued only the avenue of light duty. Williams has not made any facial showing as to whether Prospect could have instituted any other accommodation or reassigned Williams to another position as an accommodation. The issue here is only whether this particular accommodation is reasonable, and the court has determined as a matter of law that the accommodation proposed by Williams was unreasonable and would have created an undue burden on Prospect. Thus any discussion concerning the interactive process under these facts is superfluous.

In sum, Williams cannot establish a dispute of material fact as to whether he is "otherwise qualified" with a proposed accommodation. Prospect is therefore entitled to summary judgment on the ADA claim.

---

[4] Williams raises the argument that Prospect should be obligated to make the proposed accommodation because it has done so in the past or with other employees. However, *Bratten* makes it clear that, while "[c]ontinuing the practice of "assisting" [employees] in tasks on an *ad hoc* basis may be sound labor relations policy for defendants, as [ . . . ] such circumstances could promote employee loyalty and teamwork[,] employers are not required to do so under the ADA." *Bratten*, 185 F.3d at 633.

## II.     The TDA Claim

In contrast to the ADA, the TDA does not obligate employers to make reasonable accommodations to disabled employees. *Bennett v. Nissan N. Am., Inc.*, 315 S.W.3d 832, 841-42 (Tenn. Ct. App. 2009) (citing *Roberson v. Cendant Travel Servs., Inc.*, 252 F.Supp.2d 573, 583 (M.D. Tenn. 2002)). Specifically, the TDA prohibits discrimination unless a disability "to some degree" prevents an employee from performing the duties of the work involved. *See* Tenn. Code Ann. § 8-50-103. As discussed *supra*, Williams conceded at his deposition that his back injury has prevented him by a significant degree – and at a minimum by "some degree" – from performing the duties of the Rest Area Attendant position. Prospect is therefore entitled to summary judgment on this claim.[5]

## III.    Retaliation Claim

In Tennessee, the general rule is that an at-will employee may be fired for good cause, bad cause, or no cause. *Payne v. W. & Atlantic R.R. Co.*, 81 Tenn. 507, 519–520 (1884); *Forrester v. Stockstill*, 869 S.W.2d 328, 330 (Tenn. 1994). However, the employer's right to terminate the employment relationship is not without limitation, and the termination of such relationship may, under certain circumstances, give rise to a claim for retaliatory discharge. Both statutory and case law have placed restrictions upon an employer's freedom to discharge an employee, usually for reasons of clear public policy. *Chism v. Mid–South Milling Co., Inc.*, 762 S.W.2d 552, 555 (Tenn. 1988). Accordingly, in Tennessee, an employee-at-will generally may not be discharged for attempting to exercise a statutory or constitutional right, or for any other

---

[5] Williams concedes that he has no separate cause of action under the THRA. *See* Pl's Resp. Br. at p. 12.

reason that violates a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision. *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 717 (Tenn. 1997).

One such example is that the Tennessee Supreme Court recognizes a cause of action for retaliatory discharge of an at-will employee who is fired for filing a worker's compensation claim.[6] *Willard v. Golden Gallon-TN, LLC*, 154 S.W.3.571, 575 (Tenn. Ct. App. 2004); *Clanton v. Cain–Sloan Co.*, 677 S.W.2d 441, 445 (Tenn. 1984). To establish a *prima facie* Tennessee retaliatory discharge claim, Williams must show that (1) he was an employee of Prospect at the time of the injury; (2) he made a claim against Prospect for workers' compensation benefits; (3) Prospect terminated his employment; and (4) his workers' compensation claim was a substantial factor in Prospect's decision to terminate his employment. *Ellis v. Buzzi Unicem USA*, 293 F. App'x 365, 368 (6th Cir. 2008); *Anderson v. Std. Register Co.*, 857 S.W.2d 555, 558 (Tenn. 1993). The parties agree that there is no dispute as to Williams's establishing the first three of these elements. The parties only disagree as to whether Williams has established that his claim

---

[6] As the *Stein* court explained:
> This cause of action for retaliatory or wrongful discharge, which was first recognized by this Court in *Clanton* . . . strikes the balance between the employment-at-will doctrine and rights granted employees under well-defined expressions of public policy. The employment-at-will doctrine recognizes that employers need freedom to make their own business judgments without interference from the courts. An employer's ability to make and act upon independent assessments of an employee's abilities and job performance as well as business needs is essential to the free-enterprise system. In contrast, the action for retaliatory or wrongful discharge recognizes that, in limited circumstances, certain well-defined, unambiguous principles of public policy confer upon employees implicit rights which must not be circumscribed or chilled by the potential of termination. Therefore, the tort action of retaliatory or wrongful discharge is available to employees discharged as a consequence of an employer's violation of a clearly expressed public policy.

*Stein*, 945 D.W.2d at 717 (internal citations and quotation marks omitted).

for worker's compensation was a "substantial factor" in Prospect's motivation to terminate his employment. Prospect contends that Williams has no evidence to support this theory. Williams maintains that he has met his evidentiary burden by demonstrating pretext.

To establish causation, Tennessee law requires Williams to adduce proof of *more than* facts showing employment, exercise of worker's compensation rights, and termination. *Thomason v. Better-Bilt Alum. Prods., Inc.*, 831 S.W.2d 291, 293 (Tenn. Ct. App. 1992). That is, the plaintiff must also show a causal link between the exercise of worker's compensation rights (not just of the injury itself) and the discharge (a) by direct evidence, such as where the employer has an established policy or admits the reason for the termination; or (b) by compelling circumstantial evidence. *Id*. Put simply, a situation in which there is no more than assertion of a right and a discharge is fundamentally insufficient to establish this necessary causal link. Moreover, direct evidence of a causal link cannot be based on conclusory allegations and personal beliefs. *Henin v. All-America Plywood Co., Inc.*, 232 F.3d 482, 488 (6th Cir. 2000). Finally, subjective beliefs and speculation cannot form the basis for a retaliatory discharge claim; it is insufficient for a plaintiff to establish causation simply by saying that he "cannot think of another reason" as to why he was discharged. *Vaughan v. Harvard Indus., Inc*. 926 F. Supp. 1340, 1350 (W.D. Tenn. 1996).

Here, Williams rests his retaliatory discharge claim on the fact that Clingman did not immediately "clear" Williams to return to light duty work with his proposed accommodations, but, rather, waited and then terminated him. Williams contends that there is "no viable factual reason why Prospect would have fired Plaintiff other than his attempt to seek worker's compensation benefits." However, as discussed *supra*, Prospect's termination of Williams for

failure to return from medical leave was lawful because his proposed accommodation was unreasonable under the ADA, and Prospect was not obligated to accommodate Williams as requested. Given that the causal link is properly between Williams' injury and his discharge, it is not possible for Williams to establish such a link between his attempt to seek benefits and his discharge. Beyond this, there is no direct or circumstantial evidence that any actions taken by Prospect arose from Williams's filing for benefits – no discussions, no threats, no arguments, no negotiations, not even a mention by Prospect of Williams's attempt to exercise his rights. Indeed, Prospect informed Williams that he was being terminated for a different reason altogether – failure to return to work. Given the fact that Williams had an actual back injury that prevented him from return to work in anything other than a significantly restructured capacity, Williams has not effectively shown this reason to be pretextual. Williams's purely speculative "it must be so" approach to causation is exactly what is precluded by Tennessee case law. In the end, Williams has failed to adduce any proof that his worker's compensation claim was a true or substantial reason for his discharge, and on summary judgment the court cannot simply presume that to have been the case. Accordingly, Prospect is also entitled to judgment as a matter of law on the retaliation claim.

## **CONCLUSION**

For these reasons, the defendant's Motion for Summary Judgment will be granted.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge